<div style="margin">Hartford,<br>June, 1842.<br>—————<br>Jones<br>*v.*<br>The Ætna<br>Insurance Com-<br>pany.</div>

judgment was at law against the husband; yet, in my opinion, it is as proper for the court to enquire, who in equity is the debtor, as it is to enquire who in equity is entitled to the debt attached.

It has appeared to me that a new trial ought to be granted.

HINMAN, J., was of the same opinion.

New trial not to be granted.

———◆———

NORTON *against* PLUMB and another.

*A*, being indebted to *C* in the sum of 1500 dollars, gave *C* a note for that sum, signed by himself and by *B*, his surety, payable in one year. *D* indorsed this note in blank, and also another note given by *A* to *E* for 1080 dollars. *A* put into *D's* hands, as collateral security for such indorsements, a note given by *F* to *A* for 5000 dollars, subject to a lien in favour of *G* to the amount of 1800 dollars. Shortly before *A* and *B's* note to *C* became due, *A*, *C*, *D* and *F* came together, and made an arrangement, in pursuance of which *F* gave *C* his (*F's*) note of the same amount as *A* and *B's* note to *C*, and in lieu thereof, which was indorsed on *F's* note to *A* in the hands of *D*, and the last-mentioned note was thereupon given up to *A*, and the note of *A* and *B* to *C* was taken by *D*. This arrangement was made without the knowledge or consent of *B*. *A* failed; and *D* paid *A's* note to *E*. In an action brought by *D*, in the name of *G*, on *A* and *B's* note to *C*, it was held, that the arrangement thus made did not necessarily operate as payment, and that the plaintiff was entitled to recover, in this action, to the amount of the moneys paid by *D*, on *A's* note to *E*.

THIS was an action on a promissory note of the following form: " *Berlin, October* 20th, 1836. One year from date, I promise to pay *Philip Norton* fifteen hundred dollars, (value received) and interest.       *James M. Plumb,*
                              *Mary Yale.*"

The cause was tried at *Hartford, September* term, **1841**, before *Storrs*, J.

On the trial, it appeared that the suit was brought and prosecuted exclusively for the benefit of the estate of *Frederick*

*Dunham,* deceased.   The note in suit was given to *Norton,*   *Hartford,*<br>June, 1842.
for a loan of money amounting to 1500 dollars, made by him
to the defendant, *Plumb;* and was signed by *Mary Yale,* as     Norton<br>*v.*<br>Plumb.
surety for *Plumb ;* and, as further security, *Dunham* indorsed
it in blank.   Previous to *October,* 1837, the credit of *Plumb*
being suspected, and *Dunham* being indorser not only of the
note in suit, but indorser or surety for *Plumb* on two other
notes given by him, one to *Barney Powers* for 848 dollars,
and the other to *Sylvester Webster* for 200 dollars, *Plumb,* at
*Dunham's* request, put into his hands, as collateral security
for his indorsement of the note in suit, a note given by *Benja-*
*min Wilcox* to *Plumb* for 5000 dollars, subject to a condition
thereon that *Plumb* should procure and deliver to *Wilcox* a
release deed from the heirs of *Orrin Beckley* of certain real
estate, for which the last-mentioned note was given by *Wil-*
*cox* to *Plumb,* and on which estate the heirs of *Beckley* had a
lien for about 1800 dollars.   The plaintiff claimed, that *Wil-*
*cox's* note was, at the same time, put into *Dunham's* hands as
security also against said notes to *Powers* and *Webster* re-
spectively, as well as against the note in suit ; but this fact
was not admitted by the defendants.

   In the fall of 1837, shortly before the note in suit became
due, *Dunham,* being in feeble health, and, for his health, about
to take a voyage to the *West-Indies,* considering his return
very uncertain, and desirous of relieving his family from any
trouble or embarrassment, by reason of the note in suit falling
due in his absence, and not being paid by *Plumb ;* and, as
the note of *Wilcox* was conditional, so that nothing could be
realized from it, during *Dunham's* absence, to meet his lia-
bility on the note in suit, if he should become liable to pay it,
without advancing the sum so due to the heirs of *Beckley,*
which it was inconvenient for him to do ;—proposed to *Nor-*
*ton* and also to *Plumb,* that an arrangement should be made,
by which *Norton* should take a note of *Wilcox,* in lieu of the
note in suit, for the same amount.   To this *Norton* and *Plumb*
assented ; and it was, accordingly, agreed between *Norton,*
*Dunham* and *Plumb,* that, on the 9th of *October,* they and
*Wilcox* should meet at *Dunham's* house, and carry such ar-
rangement into effect.   They met at the time and place
appointed, and *Wilcox* gave *Norton* his (*Wilcox's*) note,
which was also signed by one of his sons as surety, in lieu of

*Hartford,*
*June, 1842.*

Norton
*v.*
Plumb.

the note in suit, and for the same amount; which was endorsed on the conditional note of *Wilcox* in the hands of *Dunham ;* and the last-mentioned note, there being then only about the sum due to the heirs of *Beckley* remaining unpaid thereon, was thereupon given up to *Plumb,* and the note in suit was taken by *Dunham.*

It did not clearly appear, from the evidence on the trial, whether, when *Dunham* took the note in suit, he received it from the hands of *Norton,* or whether it was by *Norton* laid on the table around which *Wilcox, Plumb* and *Dunham* were sitting, and *Dunham* took it from the table. *Dunham,* however, took the note into his possession, without objection from any of the persons present, and retained the possession thereof; and, either at that time, or shortly afterwards, erased his name from the back of it.

It was also admitted by the parties, that the note for 5000 dollars was given by *Wilcox* to *Plumb* for real estate, sold, or contracted to be sold, and conveyed by *Plumb* to him, *Wilcox ;* that such note was the sole and exclusive property of *Plumb,* except so far as *Dunham* had an interest therein as collateral security; that *Dunham* ceased to have any interest therein, after it was so given up to *Plumb,* and that the sole and exclusive interest therein then reverted to *Plumb ;* that *Norton* never had any interest therein ; and that the notes to *Powers* and *Webster* have, since the death of *Dunham,* been paid out of his estate, by his administrators, and are now held by them for the benefit of the estate.

No evidence was offered to prove, that *Dunham* ever had any knowledge of the fact, whether *Mary Yale* signed the note in suit as surety for *Plumb,* or for her own benefit.

The plaintiff claimed to have proved the following facts, which, however, were not admitted by the defendants : That when *Dunham* made said proposal to *Norton, Plumb* was, and ever since has been, insolvent; that before and at the time when the note in suit was taken by *Dunham,* it was understood and agreed between *Dunham, Norton* and *Plumb,* that *Norton* should assign the note in suit to *Dunham,* and *Dunham* should take and hold it as collateral security to indemnify him against said notes to *Powers* and *Webster ;* and that the note in suit should be a mere substitute for said note of *Wilcox,* which was so delivered up by *Dunham* to *Plumb,*

and not as an extinguishment of the note in suit ; that the note so received by *Norton* from *Wilcox*, was only received in lieu of the note in suit ; and that what took place when *Norton*, *Plumb*, *Wilcox* and *Dunham* met as aforesaid, was in pursuance, and in fulfillment, of said arrangement.

*Hartford,*
*June, 1842.*

Norton
*v.*
Plumb.

It was further admitted, that *Mary Yale* was not present when said arrangement was made, had no knowledge thereof, and never assented to it ; that *Norton* had never assigned to *Dunham* the debt, or any part of the debt, for which the note in suit was given to *Norton*, except so far as the facts above stated would amount to an assignment ; and that said debt, as between *Norton* and *Plumb*, *Mary Yale* and *Dunham*, was entirely extinguished and satisfied, by said note given by *Wilcox* and his son, to *Norton*.

The only claim made by the plaintiff on the trial, was, to recover the amount of the moneys paid out of the estate of *Dunham*, in satisfaction of the notes in favour of *Powers* and *Webster*.

The plaintiff claimed, that, on the facts so admitted and claimed by him to have been proved, he was entitled to recover on the note in suit, to the amount of the moneys paid out of the estate of *Dunham* upon said notes, and the interest thereon ; and requested the court to instruct the jury accordingly. The defendants claimed, that, upon the facts as admitted by the parties, and claimed to be proved, they were entitled to a verdict ; and the court so instructed the jury ; who returned a verdict for the defendants. The plaintiff thereupon moved for a new trial for a mis-direction.

*W. W. Ellsworth* and *Parsons*, in support of the motion, contended, that when the note in suit passed from *Norton* to *Dunham*, it did not pass as paid and extinguished, but was still subsisting as a note, exchanged for a claim on *Wilcox*. *Dunham* certainly had, as he claimed, the note for 5000 dollars as a security for the 1500 dollars and the two other notes to *Powers* and *Webster*. It was agreed to exchange notes, and leave the note in suit *alive*. That this could be done, is clear ; for *Norton could sell* this note to *Dunham*, or any one else. The question was, did he ? This *matter of fact* it was the province of the jury to decide. Suppose Mrs. *Yale*, *Plumb*, *Norton*, *Dunham* and *Wilcox* had all been present,

*Hartford,*
*June, 1842.*

Norton
*v.*
Plumb.

(as, indeed, all were, except Mrs. *Yale*,) and, as the plaintiff claims they did, had agreed to it, could not this arrangement be made? But the consent of Mrs. *Yale* is not important. She gave the note and owes it now, unless it has been *paid*; which is the very question taken from the jury. If her consent was essential, it could be only on the ground of the note's having been extinguished.

*Hungerford*, contra, insisted, 1. That from the facts appearing upon the motion, the note in suit was paid and satisfied by *Plumb*. The debt was extinguished, and no recovery can be had upon the note.

2. That there could be no effectual assignment of the note after the debt was paid. *Bartrum* v. *Caddy*, 9 *Adol. & Ellis*, 275.

3. That it was not in the power of *Plumb* to give effect to the note in suit, by a delivery of it to a third person, after it had been paid.

WAITE, J. In this case, the court instructed the jury, that, upon the facts admitted by the parties, and claimed by the plaintiff to have been proved, the defendants were entitled to a verdict in their favour. This instruction would have been right, had *Dunham* been liable only upon the note in suit, and purchased it with the funds of *Plumb*.

But the claim made by the plaintiff on the trial, presents a different case. There is nothing stated in the motion, which shews, that *Dunham* had not a right to become the purchaser. Neither his situation as an endorser, nor the fact that Mrs. *Yale* signed the note as a surety of *Plumb*, will vary that right. Had he bought the note and paid his own money for it, he could have maintained a suit upon it, for his own benefit. The note not being negotiable, such suit must necessarily have been brought in the name of *Norton*, the payee.

The legal effect of the instrument is, that *Plumb* and Mrs. *Yale* are jointly and severally bound to pay *Norton* the sum specified in the note. That obligation is no more affected, by a mere sale to *Dunham*, than if made to any other person.

Suppose *Plumb* had pledged the *Wilcox* note to *Dunham*, to indemnify him against his endorsement of the two notes to *Webster* and *Powers* only; and then *Dunham* had with it

purchased the note in suit ; what would have been the effect ? Clearly, he would be bound to pay those two notes with his own funds. Having appropriated the pledge to his own use, he would be required to discharge the debts on account of which the pledge was given,—to the amount of the pledge.

Now, the claim of the plaintiff is, that the *Wilcox* note was pledged to *Dunham*, to secure him, not only against his liability to *Norton,* but against his liability to *Webster* and *Powers.* It was insufficient to satisfy all these liabilities ; and it does not appear that any direction was given by *Plumb,* as to the note or notes which should first be paid. *Dunham* had, therefore, a right to make the application as he pleased. *Fairchild & al.* v. *Holley & al.* 10 *Conn. Rep.* 179. *Bodenham & al.* v. *Purchas,* 2 *B. & A.* 45. *Bosanquet & al.* v. *Wray & al.* 6 *Taun.* 597. *United States* v. *Kirkpatrick & al.* 9 *Wheat.* 720.

He had a right to apply the *Wilcox* note, first in discharge of his liabilities to *Webster* and *Powers ;* and then, if he paid his own money to *Norton,* to discharge his liability to him, he might sustain an action against these defendants, for money paid for their use and benefit. The fact that the pledge had been given him, and that he had applied it in discharge of his other liabilities, would have furnished these defendants with no defence to such action.

While this pledge is in the hands of *Dunham,* and his right as to the application remains, an agreement is made.between him and *Plumb,* that this right shall be relinquished ; that, with the pledge, *Dunham* shall purchase the note in suit, and hold it in the same manner as he held the other ; that is, as security for his liability to *Webster* and *Powers.* *Plumb,* being a party to this arrangement, cannot complain. Nor has any injustice been done him.

But it is said, that Mrs. *Yale* had no knowledge of this arrangement, and never assented to it. But how has she been injured by it ? The pledge was made by *Plumb ;* and, after it was so made, she had no power to controul the application, further than to require that it should be applied upon some of the liabilities to the full amount of it. If *Dunham* had a right, without her knowledge or consent, to apply the pledge in discharge of his liabilities to *Webster* and *Norton,* and then call upon these defendants to indemnify him against his liabil-

*Hartford,*
*June, 1842.*

Norton
*v.*
Plumb.

ity upon the note executed by them, then, by the arrangement, no injustice has been done Mrs. *Yale.* The plaintiff claims to recover no more for the benefit of *Dunham's* estate, than could have been recovered against her, if no such arrangement had ever been made.

We think that the purchase of the note in suit, with the note of *Wilcox*, under the circumstances stated in the claim made by the plaintiff, did not necessarily operate as payment; and consequently, that a new trial must be granted.

In this opinion the other Judges concurred.

New trial to be granted.